## Sonricker, Appellant, *v.* Sonricker.

*Divorce—Indignities to person—Evidence.*

A wife will be granted a divorce on account of indignities to her person rendering her condition intolerable and her life burdensome where the uncontradicted evidence establishes that she was knocked down several times by her husband, and choked and kicked in the stomach; pinched until marks were left upon her body, called vile, indecent and vulgar names, charged with being a whore and with running after other men, locked out of the house, deprived of fuel and other necessaries, turned out of her room without a home or shelter, and the woman with whom she roomed notified that he would pay no more rent, thus depriving her of a place to live, a shelter or a home.

Submitted May 11, 1909. Appeal, No. 115, April T., 1909, by plaintiff, from order of C. P. Butler Co., June T., 1907, No. 71, dismissing libel in divorce in case of Emma Sonricker v. George E. Sonricker. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Libel for divorce. Before GALBREATH, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in dismissing libel in divorce.

*W. H. Martin,* for appellant.—Just what course of conduct will amount to indignities affording grounds for a divorce has not and cannot be precisely defined, but the manifest intention of the law was to recognize a woman's human feelings and to give relief when her life is willfully and purposely embittered and ruined by a husband who makes her life with him one of punishment, humiliation and degradation: Elmes v. Elmes, 9 Pa. 166; Doan v. Doan, 3 Clark, 7; Mason v. Mason, 131 Pa. 161; Preston v. Preston, 11 Pa. Dist. Rep. 97; May v. May, 62 Pa. 206; Breinig v. Breinig, 26 Pa. 161; Preston v. Preston, 11 Pa. Dist. Rep. 97.

No paper-book was filed for appellee.

Opinion by Morrison, J., July 14, 1909:
The opinion of the learned judge below is as follows:— "October 3, 1908. The testimony in this case is deemed insufficient and the divorce is therefore refused. Eo die a bill of exceptions is sealed for the plaintiff to the refusal and dismissal of the petition."

No question is raised as to the sufficiency of the libel, and marriage and separation of the parties was clearly and sufficiently proved. Nor was any question of jurisdiction raised, and the libel and testimony clearly gave the court below jurisdiction. The cause of divorce stated in the libel is as follows: "Yet so it is that the said George E. Sonricker from the 8th day of October, 1905, and prior thereto, in the year of our Lord, has offered such indignities to the person of your petitioner as to render her condition intolerable and her life burdensome and thereby compelled her to withdraw from his house and family."

We have carefully read and considered all of the testimony and find it impossible to agree with the decision of the learned judge below. The parties were married on March 7, 1904, and separated finally in October, 1905. The first witness was Mrs. Sonricker herself who simply proved the marriage. The next

witness was Mrs. Dormer who testified in substance as follows: He was abusive to her, beat her and left marks on her and was abusive with his tongue. He assaulted and beat her once that I know of while I was with them in Karns City, Butler county. He called her all the evil names he could lay his tongue to; called her a whore. This witness was a married daughter of libelant by a former husband, also testified that her mother had been making her home in Butler county for three years.

The next witness was Mrs. Nancy Ross. She testified that she was eighty-three years old, resided in Mt. Vernon, Ohio, and is the mother of the libelant, and that she knew the respondent; that she lived with them a short time after September, 1905. She says she saw him abuse his wife several times; saw him knock her down, choke her and beat her over the head and kick her in the stomach; heard him call her vile names and he was cruel to her in his general treatment. He locked her out of the house once and finally drove her from her home; libelant had to leave as he deprived her of food and fuel and all the necessaries of life. Witness further said she heard him call her a dirty bitch, a slut and a whore and said she would run after anybody on the streets, and always addressed her in a gruff and unpleasant manner. This witness further testified to the good conduct of the libelant; that she did her whole duty toward respondent as a wife.

The next witness was Mrs. Sarah J. Carson. She knew the parties and had heard the respondent talking very loud to Mrs. Sonricker; they were living in her (Mrs. Carson's) house and he came into the room with a written notice and said he was leaving his wife and would not be responsible for the room rent. "If you keep her she will have to pay the rent herself, I will keep her no longer." That was in the latter part of October, 1905.

Mrs. Dormer was recalled and testified: "He knocked her down and kicked her and grabbed her flesh in this way, and she had marks from a pinch to her knees. She came to me and when she came she had marks on her. About his general treatment of her she said he was very abusive and neglected her. He used vile language toward her."

We think the case of Mason v. Mason, 131 Pa. 161, where the lower court was reversed for dismissing a petition in divorce on the ground that the respondent had offered such indignities to the person of the petitioner as to render her condition intolerable and her life burdensome, is a clear authority that the court erred in dismissing the libel in the present case.

In May v. May, 62 Pa. 206, it was held as stated in the syllabus: "The indignities to the person need not be such as to endanger life or health; but such as would render life too humiliating to bear."

In Krug v. Krug, 22 Pa. Superior Ct. 572, we held: "No single act of indignity to the person is sufficient cause for divorce; there must be such a course of conduct or continued treatment as renders the wife's condition intolerable and life burdensome. The indignities need not be such as to endanger life or health; it is sufficient if the course of treatment be of such a character as to render the condition of any woman of ordinary sensibility and delicacy of feeling intolerable and her life burdensome: Elmes v. Elmes, 9 Pa. 166; May v. May, 62 Pa. 206; Melvin v. Melvin, 130 Pa. 6; Mason v. Mason, 131 Pa. 161; Oxley v. Oxley, 191 Pa. 474. When a husband who is mentally responsible pursues such a continued course of treatment as to naturally reduce a reasonable woman to the condition defined by the statute, and thereby forces his wife to withdraw from his home, she is entitled to a divorce."

We might multiply authority, but it is unnecessary. The uncontradicted evidence establishes that this libelant was knocked down several times, and choked and kicked in the stomach, pinched until marks were left upon her body, called vile, indecent and vulgar names, charged with being a whore and with running after other men, locked out of the house, deprived of fuel and other necessaries, turned out of her room without a home or shelter, the woman with whom she roomed notified that he would pay no more rent, and thus depriving her of a place to live, a shelter or a home. These indignities happened partly in Pennsylvania and partly in Ohio and they were continued. There was not a particle of testimony contradicting a single fact testified to by libelant's witnesses and we are of the

opinion that the testimony amply sustains the grounds of divorce set up in the libel.

The assignments of error are sustained, and the decree is reversed, and it is now ordered and decreed as follows, to wit: This cause came on to be heard by the Superior Court of Pennsylvania on appeal from the judgment of the common pleas of Butler county dismissing the libel, and upon due consideration of the libel and of the testimony, it appears to us that the facts set forth in the libel are true and, therefore, upon due consideration, it is ordered, adjudged and decreed, that the court below enter a proper decree divorcing the libelant from the bonds of matrimony heretofore entered into with the respondent.

And it is further ordered, adjudged and decreed, that the said George E. Sonricker, the respondent, pay the costs of this proceeding.