## Aller v. Aller.

*Divorce — Cruel and barbarous treatment — Indignities to husband —*
*Refusal of sexual intercourse—Act of June 25, 1895.*

1. Under the Act of June 25, 1895. P. L. 308, providing for a divorce to a wronged husband, "cruel and barbarous treatment" and "indignities to the person" are two distinct causes of divorce, and where "indignities to the person" only are alleged, cruel and barbarous treatment need not be shown.

2. Refusal of sexual intercourse is not a ground for divorce in Pennsylvania.

3. It is not sufficient ground for a divorce that when the husband made overtures to his wife or touched her when they were in bed together she would scream, loud enough to be heard by other persons in the house, and would cover herself up with the bedclothes and threaten to kill herself if her husband did not discontinue his approaches, or sometimes would jump out of bed and leave the room, at times going downstairs and out on to the porch in her nightclothes; that when her husband tried to reason with her she gave no excuse for her conduct, but requested him not to insist on having sexual intercourse with her, saying that then they would get along "fine;" that the wife told her mother and her husband's mother that she never would have sexual intercourse with her husband; that upon one occasion she had her mother occupy the same bed with her and her husband, and at another time she took a young girl to bed with them; and that the situation was talked over generally by the mothers of the libellant and respondent.

4. What acts or course of conduct will amount to such indignities as will justify the court in granting a decree of divorce seems to be nowhere defined, and they may be incapable of specification or exact definition, but they must be such as, in the language of the act, render the libellant's condition intolerable or life burdensome.

5. A divorce will not be granted a husband where the indignities alleged are of a light and trivial nature, are such as the husband himself has provoked by his insistence upon having sexual intercourse with his wife, and are so unimportant in their effect as indignities under the law as to fail to justify the conclusion that the allegations in the libel have been sustained, and that the libellant's alleged wrongs are such as to warrant the granting of a divorce.

6. Divorce is purely a statutory right, and relief can be granted only where an actual statutory cause has been made to appear.

In divorce.  C. P. Fayette Co., June T., 1921, No. 7.

*J. Kirk Renner*, for libellant;  *F. E. Younkin*, for respondent.

VAN SWEARINGEN, P. J., May 31, 1921.—This application is by the husband for a divorce from his wife on the ground, as set forth in the libel, that "the respondent has, since their marriage and until the present time, subjected the libellant to such indignities as to render his condition intolerable and his life burdensome." The libel was filed under the Act of June 25, 1895, P. L. 308, making it lawful for the court to grant a divorce "where a wife shall have, by cruel and barbarous treatment or indignities to his persons, rendered the condition of her husband intolerable or life burdensome." The wife filed an answer denying the alleged indignities, and at the hearing before the master she was represented by counsel, but she did not appear in person or offer any testimony.  On the evidence on behalf of the libellant the master filed a report, finding as a fact that the respondent has subjected the libellant to such indignities to his person as to render his condition intolerable and his life burdensome, and recommending a decree of divorce.

The question has been raised at the threshold of the case whether the libellant is not bound to allege and prove, not only indignities to the person, but also cruel and barbarous treatment, it being alleged to have been said by the courts where the libel was by the husband that both of these statutory elements must concur.  It is true it was said by President Judge Rice in Fay *v.* Fay, 27 Pa. Superior Ct. 328, and in Schulze *v.* Schulze, 33 Pa. Superior

1 D. & C.

Aller v. Aller.

Ct. 325: "The acts or conduct of the wife towards her husband that will entitle the latter to a divorce under the clause of the statute now being considered must be not only such as render his condition intolerable or life burdensome, but such as amount to cruel and barbarous treatment. Both of these statutory elements must concur. If by other means, which do not constitute legal cruelty, his condition is rendered intolerable, this clause of the statute does not apply." But in each of those cases a divorce was sought on the ground of cruel and barbarous treatment under the statute, and indignities to the person were not alleged. The force of Judge Rice's statement evidently was to the effect that the cruel and barbarous treatment required to be proved was in addition to proof of intolerable conditions. This is made clear in Biddle v. Biddle, 50 Pa. Superior Ct. 30, where a divorce was sought by the husband on grounds of cruel and barbarous treatment and indignities to the person, and where, in delivering the opinion of the court, Judge Henderson said: "The complainant assumes the burden of showing by a preponderance of the credible competent evidence that the respondent has been guilty of one or both of the charges contained in the libel. The conduct of the wife that will entitle her husband to a divorce for the first cause set forth in the complaint must be not only such as renders his condition intolerable or life burdensome, but such as amounts to cruel and barbarous treatment. Both of these statutory elements must concur." And such is the substance of the language used by Judge Orlady in Egolf v. Egolf, 53 Pa. Superior Ct. 254, where both cruel and barbarous treatment and indignities to the person were alleged in the libel.

The question is set at rest in Ponthus v. Ponthus, 66 Pa. Superior Ct. 257, 259, where a divorce was sought by a husband on grounds of indignities to the person only, and where, in delivering the opinion of the court, it was said by Judge Porter: "The report shows that the conclusion of the master was based upon the theory that in this proceeding it was incumbent on the libellant to show not only that the conduct of the respondent was such as to render his condition intolerable or life burdensome, but also such as to amount to cruel and barbarous treatment; that both of these statutory elements must concur. In this we think that the learned master fell into error. It is important to notice that 'indignities to the person' and 'cruel and barbarous treatment' are two distinct causes of divorce. Prior to the Act of 1895, the law did not invest the courts with jurisdiction to grant a divorce to a husband upon the ground of 'indignities to the person.' The Act of May 8, 1854, P. L. 644, did confer jurisdiction to grant a divorce to a husband 'where the wife shall have, by cruel and barbarous treatment, rendered the condition of her husband intolerable or life burdensome.' The amendment of this statute, by the Act of 1895, clearly indicates it to be the legislative intention that 'indignities to the person' which rendered the condition of a husband intolerable or life burdensome should be a cause for a divorce, even although they did not necessarily involve 'cruel and barbarous treatment.' "

In Fay v. Fay, 27 Pa. Superior Ct. 328, President Judge Rice said it was important to notice that, under the Act of 1895, "indignities to the person" and "cruel and barbarous treatment" are two distinct causes of divorce, and that in Butler v. Butler, 1 Parson's Select Equity Cases, 329, Judge King arrived at this construction of the words "cruel and barbarous treatment" in the Divorce Act of March 13, 1815, 6 Sm. Laws, 286, which is applicable also to subsequent divorce acts: "That the cruelty within our statute which entitles a wife to a divorce from her husband is actual or personal violence or the reasonable apprehension of it, or such a course of treatment as endangers her

Aller v. Aller.

life or health and renders cohabitation unsafe." And that definition has been followed ever since: McMahen v. McMahen, 186 Pa. 485.

The evidence in the present case shows that the libellant and respondent were married on Feb. 23, 1921. They lived together six days and then separated, and the libel of the husband for a divorce was filed on March 8, 1921. The alleged indignities complained of by the husband are constituted almost wholly by his wife's refusals to permit him to have sexual intercourse with her. The libellant did not at any time subsequent to their marriage have sexual intercourse with his wife. She gave him no reason for refusing his solicitations in that respect. When he would make overtures to her or touch her when they were in bed together, she would scream, loud enough to be heard by other persons in the house, and would cover herself up with the bedclothes and threaten to kill herself if her husband did not discontinue his approaches; or sometimes she would jump out of bed and leave the room, at times even going downstairs and out on to the porch in her nightclothes. When the libellant tried to reason with her, she gave no excuse for her conduct, but requested him not to insist on having sexual intercourse with her, saying that then they would get along fine. She told her mother and the libellant's mother that she never would have sexual intercourse with her husband. On one occasion she had her mother occupy the same bed with her and her husband, and at another time she took a young girl to bed with them. The situation was known to, and talked over generally by, the mothers of the libellant and respondent, neither of whom, however, was able to persuade the respondent to change her mind in the matter, although both of them advised her to do so, and remonstrated with her in the course she was pursuing. The only indication as to the reason for respondent's actions was a statement made by her to the libellant's mother to the effect that she was afraid she was not like other women, that she was "not very large," and, apparently, she feared to permit herself to become pregnant. Both of the older women testified that physically she was normal and all right. There was no evidence that anybody outside of the immediate families learned anything about the trouble between the libellant and respondent.

Refusal of sexual intercourse is not a ground for divorce in Pennsylvania: Eshbach v. Eshbach, 23 Pa. 343; Johnson v. Johnson, 31 Pa. Superior Ct. 53; Platt v. Platt, 38 Pa. Superior Ct. 551; Hexamer v. Hexamer, 42 Pa. Superior Ct. 226; Cunningham v. Cunningham, 60 Pa. Superior Ct. 622; Klopfer's Appeal, 1 Monaghan, 81; Magill v. Magill, 3 Pitts. R. 25. The master in his report concedes that to be true. But the master was of opinion that the refusal of this wife to have sexual intercourse with her husband constituted an indignity, and that, taken with other indignities which he was of opinion appeared in the case, to wit, her screams at night, and threats to kill herself, her telling of the matter to her mother and to her husband's mother, her running out of the house in her nightclothes, and her taking her mother and the young girl to bed with her, constituted sufficient ground upon which to warrant the granting of a divorce. We are not convinced, however, of the correctness of that conclusion.

"The cruel and barbarous treatment and indignities to the person, rendering the condition of the husband intolerable or life burdensome, which are, by the Act of June 25, 1895, made a cause for divorce, relate to the treatment of the husband by his wife and her conduct toward him personally:" Hexamer v. Hexamer, 42 Pa. Superior Ct. 226. What acts or course of conduct will amount to such indignities as will justify the court in making a decree of divorce seems to be nowhere defined, and perhaps they are incapable of

1 D. & C.

specification or exact definition, but they must be such as, in the language of the act, render the libellant's condition intolerable and life burdensome: May v. May, 62 Pa. 206; Crawford v. Crawford, 64 Pa. Superior Ct. 30; Cantor v. Cantor, 70 Pa. Superior Ct. 108. "Divorces are not to be granted upon the ground of 'indignities to the person' which are of a light and trivial nature, nor the result of mere occasional outbursts of temper; they must be such as amount to an habitual course of conduct which necessarily renders the condition of the conjugal partner intolerable and life burdensome. The indignities of which a husband complains must not be such as he himself has provoked:" Ponthus v. Ponthus, 66 Pa. Superior Ct. 257. In Cantor v. Cantor, 70 Pa. Superior Ct. 108, it was held that a husband was not entitled to a divorce from his wife, who had syphilis, where it appeared that, as soon as she discovered that she had the disease, she immediately withdrew from the marital relation, the husband not having contracted the disease from her. In Whiffen v. Whiffen, 72 Pa. Superior Ct. 593, an application for a divorce by a husband on grounds of indignities to the person and cruel and barbarous treatment was refused, where the evidence showed that the facts on which the libellant relied were so negative in character and so unimportant in effect as to justify the conclusion that the allegations in the libel were not sustained, and that the libellant's alleged wrongs were not such as to warrant the granting of a divorce.

We conclude, therefore, under the evidence, that it has not been proved that the respondent has been guilty of such indignities to the person of her husband as to render his condition intolerable and life burdensome. Refusal of sexual intercourse of itself not being sufficient to warrant the granting of a divorce, and of itself not constituting an indignity under the Act of June 25, 1895, P. L. 308, under which this application is made, it is difficult to discover any overt act or word on the part of the respondent that will amount to an indignity to the person of her husband. The alleged indignities suggested by the master are of the lightest and most trivial nature, if, indeed, they constitute indignities at all, and they were such as the libellant himself provoked by his insistence upon having sexual intercourse with his wife. As his own testimony shows, his wife requested him not to insist on having sexual intercourse with her, saying that then they would get along fine. His persistence in the matter caused her screams at night, and her threats to kill herself, and was the occasion of her leaving the bed at times and going downstairs and sometimes out on to the porch in her nightclothes, and resulted in the respondent's making known the trouble between herself and her husband to her mother and to her husband's mother, and, finally, in her bringing her mother or the young girl to bed with her, although there is no evidence that the girl was old enough to know or understand the purpose of her presence there. These matters are so unimportant in their effect as indignities under the law that they fail to justify the conclusion that the allegations in the libel have been sustained and that the libellant's alleged wrongs are such as to warrant the granting of a divorce. The libellant was rather hasty in instituting this proceeding. In Hexamer v. Hexamer, 42 Pa. Superior Ct. 226, the husband on the wedding night and for two months thereafter was denied sexual intercourse with his wife, she having a morbid fear of childbirth, yet later a child was born. And the other indignities there complained of apparently were of more merit than those shown here, but a divorce there was refused. As said in Cantor v. Cantor, 70 Pa. Superior Ct. 108, divorce is purely a statutory right, and relief can be granted only where an actual statutory cause has been made to appear.

And now, May 31, 1921, for the reasons stated in the opinion herewith filed, the finding of the master that the respondent has subjected the libellant to such indignities to his person as to render his condition intolerable and his life burdensome, and the master's recommendation of a decree of divorce, are overruled, a decree of divorce is refused and the libel is dismissed.

From Luke H. Frasher, Uniontown, Pa.